IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NELSON ARIEL UMANZOR-CHAVEZ, | * |
| Petitioner, | *  Civil Case No.: SAG-25-01634 |
| v. | * |
| KRISTI NOEM, *et al.*, | * |
| Respondents. | * |

## MEMORANDUM OPINION

Petitioner Nelson Ariel Umanzor-Chavez filed a Petition for a Writ of Habeas Corpus ("the Petition") on May 21, 2025. ECF 1. The Petition included three claims: (1) Violation of 8 U.S.C. § 1231(a)(6), (2) Due Process Violations under the Fifth Amendment, and (3) Habeas Corpus pursuant to 28 U.S.C. § 2241. As relief, Petitioner requested that the Court "[i]ssu[e] an Order to Show Cause, ordering Respondents to justify the basis of Petitioner's detention in fact and in law, forthwith" and "[i]ssu[e] a writ of habeas corpus, and order[] that Petitioner be released from physical custody."[1] ECF 1 at 9.

---

[1] In his Amended Petition, Petitioner also seeks an injunction against his removal to El Salvador or to "any other country without first providing him notice and offering him adequate opportunity to apply for withholding of removal as to that country." ECF 12-2 at 10. Petitioner concedes that he is a member of a class in *D.V.D. v. U.S. Department of Homeland Security*, Case No. 1:25-cv-10676 in the District of Massachusetts. *See* ECF 19 at 4. His issues relating to potential removal to third countries and the procedures by which the government must give notice and opportunity to seek relief from such removal will be addressed there. However, his habeas issues seeking immediate release from custody will not be addressed in the District of Massachusetts and are appropriate for resolution in this Court. The government's motion to dismiss or stay, ECF 18, on this basis will be denied, although this Court will not reach any of the issues pending in that class action to avoid duplicative or inconsistent rulings.

Respondents filed a motion to dismiss the Petition, ECF 7, and Petitioner filed a reply, ECF 8. This Court held a motions hearing on July 9, 2025, and requested supplemental briefing on July 10, 2025. ECF 11. On July 15, 2025, Petitioner filed a supplemental brief and attached an Amended Petition, ECF 12-2, "in order to adequately plead claims relating to regulatory violations under the *Accardi* doctrine," ECF 19 at 3–4, which this Court permitted, ECF 15. The parties submitted a supplemental briefing schedule on July 18, 2025. ECF 16. Respondents filed an opposition to the Amended Petition, ECF 18, and Petitioner filed a reply, ECF 19. That reply triggered another request for supplemental briefing from the Court and a show cause order when the government failed to reply. ECF 20, 21. The parties then submitted additional supplemental filings. ECF 22, 23, 25, 26. This Court has carefully considered all of the briefing and evidence submitted.

For the reasons stated below, the Amended Petition, ECF 12-2, must be dismissed without prejudice. The motion to dismiss the Amended Petition, ECF 18, will be granted, and the motion to dismiss the original Petition, ECF 7, will be denied as moot. The administrative stay of Petitioner's removal from the United States, to allow adjudication of his Petition and Amended Petition, will be vacated.

I. **BACKGROUND**

Petitioner is a citizen and national of El Salvador. ECF 12-2 at 3. On November 13, 2015, while a minor, he entered the United States near El Paso, Texas without being admitted or paroled by an immigration official. ECF 7 at 2. On November 14, 2015, immigration officials ordered Petitioner released and provided him with forms informing him of his rights as an unaccompanied El Salvadorian minor. *Id*. Petitioner filed a Petition for U Non-Immigrant Visa, which remains pending with the United States Customs and Immigration Services ("USCIS"). *Id*.

On May 16, 2019, an Immigration Judge ("IJ") from the Executive Office of Immigration Review ("EOIR") denied Petitioner's request for asylum and ordered the Petitioner to be removed from the United States to El Salvador. ECF 1-1. In that same order, however, the IJ granted Petitioner Convention Against Torture ("CAT") withholding of removal. *Id*. And despite his order of removal, ICE released Petitioner from custody on June 3, 2019, permitting him to remain in the United States pursuant to an Order of Supervision. ECF 8-2. The Order of Supervision had certain conditions, including annual check-ins and provision of an employment authorization document. ECF 8-2. Petitioner remained in the United States, where he lives with his U.S.-citizen wife and U.S.-citizen stepson. ECF 8-1.

On May 21, 2025, Petitioner reported to the Baltimore office of Immigration and Customs Enforcement ("ICE") for his annual check-in. ECF 12-2 at 7. At that meeting, Petitioner's Order of Supervision was revoked, and he was served with a notice that ICE "intends to" remove him to Mexico. ECF 7-1. He also received a Notice of Revocation of Release, which provided in part:

> You are subject to an administratively final order of removal. Your case is under current review by the Government of Mexico for issuance of a travel document.

ECF 7-2. The notice also provided information about the processes for reviewing his custodial status. *Id*.

Petitioner filed his Petition on the day of his arrest, May 21, 2025.[2] ECF 1. Since that date, Petitioner has remained in ICE custody, first in Baltimore, Maryland and now in Winnfield, Louisiana. ECF 7 at 3. To date, to this Court's knowledge, he has not been provided an informal

---

[2] The government does not contest that the Petition was filed before Petitioner's transport out of Baltimore and thus is appropriately pending in this Court.

interview to afford him an opportunity to respond to the reasons for revocation stated in the Notice of Revocation of Release, ECF 7-2. ECF 12-2 at 8.

## II. LEGAL STANDARDS

28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis,* 533 U.S. 678, 688 (2001).

## III. ANALYSIS

### A. Count I

Count I of the Amended Petition asserts a "violation of 8 U.S.C. § 1231(a)(6)." ECF 12-2 at 8. Permitting Petitioner to advance a cause of action under that provision would contravene 8 U.S.C. § 1231(h), which expressly provides that "[n]othing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Thus, Count I does not merit relief.

### B. Count II: Due Process and Count III: Habeas Claim

Counts II and III do not present distinct claims. ECF 12-2 at 8–9. The Amended Petition itself is a habeas claim premised on the notion that Petitioner's detention is "in violation of the Constitution or laws" of the United States. ECF 12-2 at 9. Petitioner now advances one primary argument: that his continued detention violates *Zadvydas v. Davis,* 533 U.S. 678 (2001) because his removal to Mexico, the one country listed in his Notice of Revocation of Release, is not reasonably foreseeable. ECF 19 at 5–7.

The parties agree that Petitioner is presently detained pursuant to 8 U.S.C. § 1231(a)(6). A brief overview of the relevant provisions of § 1231 is warranted. Section 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." The parties agree that Petitioner's removal period began on May 16, 2019, and expired 90 days later without his removal from the United States.

Section 1231(a)(3) provides that if the alien does not leave or is not removed during the removal period, the alien "shall be subject to supervision" under the regulations prescribed by the Attorney General. But § 1231(a)(6) specifies that three particular categories of inadmissible or criminal aliens "may be detained beyond the removal period." One such category, relevant to this case, is "[a]n alien ordered removed who is inadmissible under section 1182 of this title." The parties agree that Petitioner falls within that category and § 1231(a)(6). They disagree as to what that provision authorizes with respect to "re-detention" of an alien who had been previously released under supervision.

Both parties, at least in part, rely on *Zadvydas* in support of their positions. In that case, the Supreme Court weighed whether § 1231(a)(6) allows indefinite detention of an alien pending removal, or whether the statute contains an implicit "reasonable time" limitation subject to federal court review. *Zadvydas*, 533 U.S. at 682. Both aliens at issue in *Zadvydas* had been detained for lengthy periods after they received orders of removal. *Id.* at 684–86. Kestutis Zadvydas, who had a long criminal record, was ordered deported in 1994 and remained detained until he filed a petition for writ of habeas corpus in September 1995. *Id.* at 684. Zadvydas had been born of Lithuanian parents in a displaced persons camp in Germany and had immigrated to the United States as a young child. *Id*. Kim Ho Ma, who was convicted of manslaughter in a gang-related shooting,

remained in custody following the end of his removal period in early 1999 and had to file a petition for writ of habeas corpus later that year to obtain release. *Id*. at 685–86.

In *Zadvydas*, the government argued that because § 1231(a)(6) provides no limit on the length of time beyond the removal period a qualifying alien "may be detained," the length of detention was up to the Attorney General, not the courts. *Id*. at 689. The Supreme Court disagreed and reasoned that a statute allowing for indefinite and potentially permanent detention "would raise a serious constitutional problem." *Id*. at 689–90. The Supreme Court could not find "any clear indication of congressional intent to grant the Attorney General the power to hold indefinitely in confinement an alien ordered removed" *Id*. at 697. The Supreme Court counseled that "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id*. at 699. However, the Supreme Court also specified the need for habeas courts to "recognize Executive Branch primacy in foreign policy matters." *Id*. at 700. With those advisements, among others, the Supreme Court deemed it "practically necessary to recognize some presumptively reasonable period of detention" and deemed a 6-month period to be presumptively reasonable. *Id*. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. The Court expressly specified that the 6-month presumption did "not mean that every alien not removed must be released after six months." *Id.* In fact, even though both Zadvydas and Ma had been detained for longer than six months by the time of the Supreme Court decision and it had been years since they had been released on supervision, the Supreme Court remanded both cases for further proceedings consistent with its opinion. *Id*. at 702. In other words, the lower

courts in both cases were directed to weigh whether it had been determined "that there is no significant likelihood of removal [of Zadvydas and Ma] in the reasonably foreseeable future." *Id*. at 701.

Against that background, Petitioner argues that *Zadvydas* "gives the government a presumption that 180 days' worth of detention is reasonable," but does not also prohibit him from challenging the reasonableness of that presumption via habeas prior to the expiration of the 180 days. ECF 19 at 6. Petitioner contends that he can rebut the 6-month presumption under *Zadvydas* because he has put forth evidence showing that his removal to Mexico is not reasonably foreseeable, specifically "a government filing in [*Sanchez-Hernandez v. Figueroa*, No. 25-cv-2351 (D. Ariz. 2025)] confirming that Mexico is no longer issuing travel documents to Central Americans." *Id*. at 5. In that filing, the government responded to the court's request for additional information regarding Mexico's agreement to accept the petitioner Sanchez-Hernandez, a Honduran citizen. ECF 19-2 at 2. The government explained that it previously "had reason to believe Mexico's agreement with the United States to accept third country removals from Honduras would continue and included [Sanchez-Hernandez] . . . because, at the time, there was no prior approval process necessary for third country removals to Mexico." *Id*. The government was later "informed by counsel for [ICE] that Mexico had indicated it would no longer agree to third country removals, despite its prior agreement to do so." *Id*. The government went on to explain that as of the date of that filing, July 15, 2025, "Mexico is still generally declining to accept third county removals . . . [but] a specific decision with respect to [Sanchez-Hernandez] has not been made and [Sanchez-Hernandez] still has a travel document request pending with Mexico." *Id*.

In its most recent filing in this case, the government attests that "Mexico is presently accepting certain third country nationals being removed from the United States." ECF 25-1 at 6. Petitioner notes, however, that Mexico does not seem to have taken any action on the government's May request to issue him travel documents. ECF 26 at 1. He argues that due to this "concrete evidence" showing that "the one country named for possible removal will not issue him travel documents," his removal is not reasonably foreseeable, and suggests he has successfully rebutted the presumption that his continued detention is reasonable. ECF 19 at 7.

This Court has growing concerns about the length of time the request to Mexico has been pending and the apparent lack of other concrete plans for third-country removal of Petitioner. Nevertheless, this Court remains unconvinced that *Zadvydas* contemplates an assessment of reasonable foreseeability prior to the expiration of the presumptively reasonable 6-month window. The Supreme Court was clear that the government is entitled to a reasonable period to determine the Petitioner's removability to a third country. And it expressly allowed the alien to challenge the likelihood of removal "[a]fter this 6-month period," not during it. *Id.* at 701. To the extent that this Court's administrative stay is creating some impediment to the government making a plan for removal (although this Court is not sure why that would be the case), the government, which enjoys "Executive Branch primacy in foreign policy matters," *id.* at 700, must be afforded an unfettered opportunity to effect its plans. Should its efforts ultimately prove futile, Petitioner will be able to file a new habeas action in his district of confinement, re-raising his *Zadvydas* claim once the 6-month period has expired.

In sum, while habeas relief may eventually be appropriate if Plaintiff's pre-removal detention becomes prolonged and implicates due process concerns, it is not yet warranted.

## C. Count IV: Violation of agency regulations

In Count IV of the Amended Petition, Petitioner alleges his due process rights have been violated because the government failed to abide by its own regulations when revoking his release. Specifically, Petitioner contends that the government's revocation of his Order of Supervision violated 8 CFR § 241.4(*l*)(2) because the official who signed his release revocation lacked the authority to do so. ECF 12-2 at 9–10; ECF 19 at 7–12. Due to this violation of the *Accardi* doctrine, Petitioner argues that the Notice of Revocation should be vacated, and his Order of Supervision should be restored. *Id*. at 12; *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that federal agencies are obliged to comply with their own policies, regulations, and procedures, and failure to do so may give rise to a right of action to challenge non-compliant agency action). The government responds that § 241.4(*l*) "provide[s] significant discretion to ICE to revoke release," and that ICE acted consistently with the regulation in revoking Petitioner's release here. ECF 18 at 12.

Section 241.4(*l*)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.

The regulation also permits revocation when, in the discretion of the "revoking official . . . [i]t is appropriate to enforce a removal order or commence removal proceedings against an alien" or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(*l*)(2)(iii)-(iv).

The record reflects that Petitioner's Notice of Revocation of Release was signed by a "[d]eportation [o]fficer . . . 'for' the Field Office Director."[3] ECF 19 at 9; ECF 7-2. Petitioner contends that this was impermissible because a "deportation officer" does not have the authority to revoke an order of supervised release under § 241.4(*l*)(2). ECF 19 at 9.[4] For its part, the government argues that authority to execute notices of revocation under § 241.4(*l*)(2) was properly delegated from the Executive Associate Director of ICE[5] to Nikita Baker, the Acting ICE Baltimore Field Office Director, pursuant to an ICE delegation memo effective March 1, 2003 ("March 2003 ICE Memo"). ECF 18 at 16–17; ECF 14-1 at 4, 8–9. Acknowledging that a deportation officer, and not the Executive Associate Director of ICE or the Field Officer Director,

---

[3] The deportation officer's signature is an illegible squiggle, and there has been no evidence to establish the officer's identity.

[4] The Court notes that the Notice of Revocation of Release advises Petitioner: "You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation." ECF 7-2. The Amended Petition states that Petitioner has not been afforded such an interview, and nothing in the record indicates that the interview has taken place to date. ECF 12-2 at 8, 9. The government argues that the "informal interview" pertains only to instances of revocation based on a "[v]iolation of conditions of release" under § 241.4(*l*)(1). Here, Petitioner's Notice of Revocation of Release cites "changed circumstances" permitting ICE to "expeditiously remove[]" Petitioner pursuant to his "outstanding order of removal," ECF 7-2, and the government states that it complied with § 241.4(*l*)(2) (which does not contain an "informal interview" provision) in revoking Petitioner's release. ECF 18 at 14. Nevertheless, in view of the assurances of an "informal interview" provided in the Notice of Revocation of Release and the fact that courts have interpreted § 241.4(*l*) as requiring an informal interview upon revocation of release regardless of the reason for the revocation, *see Ceesay v. Kurzdorfer*, No. 25-CV-267, 2025 WL 1284720, at *18 (W.D.N.Y. May 2, 2025), the Court considers the lack of interview and finds it to be an insufficient basis on which to grant the relief requested in the Amended Petition, release from detention. ECF 12-2 at 9–11. Neither the Notice of Revocation of Release nor § 241.4(*l*)(1) sets forth a timeframe for the informal interview to take place – other than to assure that it will be done "promptly."

[5] The "Executive Associate Commissioner" under § 241.4(*l*) is the equivalent to the Executive Associate Director of ICE. *See* 8 C.F.R. § 1.2; *Ceesay*, 2025 WL 1284720, at *16.

signed Petitioner's Notice of Revocation of Release, ECF 7-2, the government further contends that the March 2003 ICE memo permits "re-delegat[ion] [of] this authority to any immigration officer within ICE," so Petitioner cannot demonstrate that ICE violated any specific procedures under the applicable regulations when it revoked Petitioner's release. ECF 18 at 17 (citing ECF 14-1 at 8–9).

The parties agree that § 241.4(*l*)(2) governs the revocation of Petitioner's release. ECF 18 at 14–15; ECF 19 at 7–8.[6] Pursuant to that regulation, the "Executive Associate Commissioner" or a "district director" has the discretion to revoke release "to enforce a removal order," but it is not clear whether an ICE field office director, let alone a deportation officer, has that same authority. 8 C.F.R. § 241.4(*l*)(2); *see Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (finding that "[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position titles, whether an ICE field office director has authority to revoke an alien."). The question then becomes whether the government can delegate that regulatory authority and whether it has properly done so here.

The Court finds that the authority to issue notices of revocation under § 241.4(*l*)(2) can be delegated pursuant to the March 2003 ICE Memo, which broadly delegates from the Secretary of Homeland Security to the Assistant Secretary for ICE the authority "to enforce and administer the immigration laws . . . with respect to matters within the jurisdiction of ICE" and "[a]uthority under

---

[6] While the Notice of Revocation of Release cites both § 241.4 and § 241.13, Petitioner correctly notes that § 241.13 is not applicable here, as that section applies to individuals detained past the 90-day removal period whose detention status is reviewed by the Headquarters Post-order Detention Unit. 8 C.F.R. §§ 241.13(a), (b)(2). Here, Petitioner was never detained past the 90-day removal period before his recent arrest and revocation of his Order of Supervised Release, and his Order of Supervision was issued by the Baltimore Field Office, not the Headquarters Post-order Detention Unit. ECF 8-2.

11

the immigration laws, including but not limited to . . . 8 U.S.C. [§ 1231]" to "detain aliens." ECF 14-1 at 1, 2, 4. Section 4 of the March 2003 ICE Memo permits redelegation of this authority to "officers and employees of ICE." *Id*. at 7. The government specifically contends that the redelegation provided under Section 4(D)(3) to "[i]mmigration [o]fficers" allowed for Acting Field Office Director Baker to sign Petitioner's Notice of Revocation of Release. ECF 18 at 16–17. While this may be true, Petitioner's Notice of Revocation of Release was not signed by Baker—it was signed by a deportation officer "for" Baker. ECF 7-2. The government fails to explain how Section 4(D)(3) authorizes a deportation officer to execute such documents. Section 4(D)(3) provides as follows:

> Immigration Officers. The Assistant Secretary of ICE, the Director of Immigration Interior Enforcement, any Regional or District Director for Interior Enforcement, and any deportation officer, detention enforcement officer, detention officer, special agent, investigative assistant, intelligence agent, immigration agent (investigations), or other immigration officer (as described in section 103 of the INA or 8 C.F.R. 103.1(j)), or senior or supervisory officer of such employee, within ICE, is designated as an immigration officer authorized to exercise, and hereby delegated, the powers and duties of such officer as specified by the immigration laws and chapter 8 of the Code of Federal Regulations.

ECF 14-1 at 8–9. That section indicates that other ICE employees, including high ranking ones, can execute the powers and duties of an immigration officer. It does not, as the government contends, indicate the reverse: that every immigration officer can execute the powers and duties of the higher-ranking supervisory officials.

The Court finds that § 241.4(*l*)(2) affords the government extraordinarily broad discretion to revoke release and that authority can be validly delegated to other ICE employees. However, the March 2003 ICE Memo contains no delegation of authority permitting a deportation officer to

sign Petitioner's Notice of Revocation of Removal. Thus, in issuing Petitioner's Notice of Removal in that manner, without a valid delegation, the government violated § 241.4(*l*)(2).[7]

The *Accardi* doctrine provides that when an agency violates its own regulations, or at least those that result in prejudice to a particular individual, the agency's actions are generally invalid. *Accardi*, 347 U.S. at 267–68. The Due Process Clause is implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752–53 (1979). But nothing in the text or substance of the regulations or policies at issue here, § 241.4(*l*)(2) and the March 2003 ICE Memo, ECF 14-1, indicates that they were promulgated for Petitioner's "guidance or benefit" or created any substantive right. *See id.*; *see also Orellana v. Bondi*, 141 F.4th 560, 566–67 (4th Cir. 2025) (determining that agency's internal policy conferred no substantive benefit and did not have the force of law, so petitioner was not prejudiced when agency failed to follow it, and *Accardi* doctrine did not apply). Rather, these regulations fall within the "procedural rules adopted for the orderly transaction of business" that the Supreme Court has found an administrative agency has the discretion to "relax or modify." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970).

---

[7] As additional grounds for his *Accardi* argument, Petitioner argues the Field Office Director lacked authority to revoke the Order of Supervision because none of the "required findings" were made. ECF 19 at 9; § 241.4(*l*)(2) ("A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."). Petitioner has provided no authority on which to base a conclusion that "findings" are "required" under that regulation. The regulation requires the district director to hold a specific opinion, not to make express findings. It does not compel the government to document what facts or factors formed the basis of the opinion.

While the government clearly violated its own procedural regulations by having a deportation officer sign Petitioner's Notice of Revocation of Release, these types of violations do not implicate constitutional concerns warranting habeas relief. *See Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008) ("[N]ot every procedural misstep or difficulty raises anything like a constitutional issue . . . few proceedings are perfect and one can have real errors, including ones that adversely affect a party's interests, without automatically violating the Constitution."). Habeas is the proper vehicle "to challenge detention that is without statutory authority" or that violates the Constitution. *See Zadvydas*, 687–88. In assessing habeas relief, the Court looks to "the overall reasonableness of [the petitioner's] detention, not to whether the Government was flawless in its execution." *I.V.I. v. Baker*, No. 25-cv-1572, ECF 25 at 6. Under 8 U.S.C. § 1231, the government maintains the statutory authority to detain and remove noncitizens like Petitioner who have a final order of removal. Such authority is not invalidated by the government's failure to follow its own regulations, where those regulations are purely procedural and not promulgated to protect Petitioner's constitutional rights. *See Orellana*, 141 F.4th at 566–67.

While the above analysis does not allow this Court to afford Petitioner his requested relief at this stage, there is no doubt that he is entitled to due process of law in the context of his detention and removal proceedings. *See Trump v. J.G.G.*, 604 U.S. ---, 145 S. Ct. 1003, 1006 (2025). The requirements of due process, however, are simply not as expansive as Plaintiff urges, and habeas relief is not yet warranted.

## IV.   CONCLUSION

For the reasons stated above, this Court will DISMISS the Amended Petition without prejudice, ECF 12-2, and the motion to dismiss the Amended Petition, ECF 18, will be GRANTED. The motion to dismiss the original Petition, ECF 7, will be DENIED AS MOOT. This

Court's order administratively staying Petitioner's removal from the United States to permit adjudication of the Amended Petition, ECF 6, is vacated. This vacatur is stayed for one week from the date of this Order to allow Petitioner a reasonable opportunity to seek appellate review. During the one-week administrative stay, the government shall not remove the Petitioner from the United States. The Clerk is directed to CLOSE this case.

Dated: August 27, 2025                                          /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge